UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ALHASSAN KABBA,

        Petitioner,

    v.                                                                      19-CV-643
                                                                        DECISION AND ORDER
WILLIAM P. BARR,
U.S. Attorney General;

THOMAS FEELEY,
Field Office Director for Detention and
Removal, Buffalo Field Office, Bureau of
Immigration and Customs Enforcement;
and

JEFFREY SEARLS,
Assistant Officer in Charge, Buffalo
Federal Detention Facility,

        Respondents.

The *pro se* petitioner, Alhassan Kabba, is a lawful permanent resident of the United States. Docket Item 10-2 at 2. For more than eighteen months—since February 6, 2018—the Department of Homeland Security ("DHS") has detained him during his removal proceedings. *Id.* at 3. On May 16, 2019, Kabba filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 challenging the constitutionality of his continued detention at the Buffalo Federal Detention Facility in Batavia, New York, Docket Item 1; on August 5, 2019, the government responded, Docket Item 10; and on August 12, 2019, Kabba replied, Docket Item 11.[1]

---

[1] Kabba's reply appears to include some entirely new allegations and claims, including allegations that the respondents are not providing adequate medical care.

For the reasons that follow, this Court conditionally grants Kabba's petition.

## **BACKGROUND**

The following facts, taken from the record, come largely from filings with DHS. Other facts, provided by Kabba, are undisputed.

### **IMMIGRATION HISTORY, TIES TO THE UNITED STATES, AND CRIMINAL PROCEEDINGS**

Kabba is a thirty-six-year-old man who is a native and citizen of Sierra Leone. Docket Item 10-2 at 2; Docket Item 12 at 3. He entered the United States as a refugee on May 15, 2001. Docket Item 10-2 at 2. On June 12, 2009, Kabba became a lawful permanent resident. *Id*.

On June 27, 2014, Kabba was convicted of second-degree rape in violation of New York State law. *Id*. at 3. He served a term of imprisonment and was released on parole on May 4, 2015. Docket Item 12 at 84. After several parole violations, resulting in several returns to state custody, Kabba eventually was taken into custody by DHS. Docket Item 10-2 at 3.

### **REMOVAL PROCEEDINGS**

About a month after taking Kabba into custody, DHS placed him in removal proceedings on March 8, 2019. *Id*. at 3. On October 12, 2018, an immigration judge ordered Kabba removed to Sierra Leone. *Id*. at 4. Five months later, the Board of

---

*See* Docket Item 11. This proceeding addresses Kabba's petition for a writ of habeas corpus—in other words, a request to be released from unlawful detention. If Kabba has constitutional or other claims unrelated to the validity of his detention, he must raise them in another, separately-docketed proceeding.

2

Immigration Appeals ("BIA") affirmed that removal order. *Id.* On March 20, 2019, Kabba filed a petition for review with the Second Circuit.[2] *See* Petition for Review of Agency Order, *Kabba v. Barr*, No. 19-695 (2d Cir. Mar. 20, 2019). The Second Circuit then stayed Kabba's removal pending review of his claims. Motion Order, *Kabba v. Barr*, No. 19-695 (2d Cir. June 20, 2019). Kabba's Second Circuit petition remains pending.

**DETENTION-RELATED PROCEEDINGS**

On February 6, 2018, Kabba entered DHS custody after he completed serving his New York State sentence. *Id.* at 3. Several months later, an immigration judge denied Kabba's request for a change in custody status under 8 C.F.R. § 236.1(c). Docket Item 12 at 16. The immigration judge determined that Kabba "is subject to mandatory detention due to his rape 2nd conviction, which is for an aggravated felony." *Id.* In a memorandum issued on August 9, 2018, another immigration judge explained that 8 U.S.C. § 1226(c) mandated Kabba's detention without bond because he "has an aggravated felony conviction." *Id.* at 20. On October 15, 2018, the BIA affirmed, *id.* at 31, and on October 26, 2018, Kabba petitioned the Second Circuit for review of that decision. Docket Item 10-2 at 4. On March 15, 2019, the court dismissed that petition

---

[2] Kabba's initial filing in his petition for review of the BIA's decision suggests that he seeks "relief under the case law imposing limit [sic] on prolong [sic] Detention without a hearing," not review of his removal order. Motion Information Statement, *Kabba v. Barr*, No. 19-695 (2d Cir. Mar. 20, 2019). In fact, the government moved to dismiss the petition on that basis. *See* Motion, *Kabba v. Barr*, No. 19-695 (2d Cir. Apr. 2, 2019). But later-filed documents clarify that Kabba seeks review of his removal order in that proceeding. *See, e.g.,* Motion for Stay of Removal, *Kabba v. Barr*, No. 19-695 (2d Cir. May 29, 2019).

3

for lack of jurisdiction.  Motion Order, *Kabba v. Barr*, No. 18-3243 (2d Cir. Mar. 15, 2019).

On March 11, 2019, DHS notified Kabba that it would review his custody determination on June 3, 2019.  Docket Item 10-2 at 4.  DHS told Kabba that he might be released, depending on whether he could demonstrate that he was not a risk of flight or danger and that his removal was not reasonably imminent.  More specifically, DHS advised him that "[r]elease . . . is dependent on your demonstrating by 'clear and convincing evidence' that you **will not** pose a danger to the community and **will not** be a significant flight risk."  Docket Item 12 at 39 (emphasis in original).  And "[y]ou must also demonstrate that a travel document is not available in the reasonable [sic] foreseeable future to affect [sic] your removal from the United States."  *Id.*

On June 3, 2019, DHS advised Kabba that it would not conduct the planned review because his removal was expected that month.  Docket Item 10-2 at 5.  But on July 3, 2019, after the Second Circuit had stayed Kabba's removal, DHS conducted the custody review and determined that Kabba should remain in custody pending judicial review of his removal order.  *Id.* at 6.  Kabba remains detained at the Buffalo Federal Detention Facility in Batavia, New York.

## **DISCUSSION**

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  The government maintains that Kabba is validly detained under 8 U.S.C. § 1226(c) and that his "constitutional rights have not been violated."  Docket Item

4

10 at 6-7. Kabba makes two arguments to the contrary. Docket Item 1 at 10-11. First, he argues that his prolonged detention is not justified by individualized findings made in "proceedings conforming to traditional standards of fairness encompassed in due process of law." *Zadvydas v. Davis*, 533 U.S. 678, 694 (2001) (quoting *Shaughnessy v. United States ex. rel Mezei*, 345 U.S. 206, 212 (1953)). *See id.* at 10. Second, he argues that the "government's categorical denial of bail to noncitizens violates" the Excessive Bail Clause. *Id.* at 10-11.

Because Kabba is proceeding *pro se*, this Court holds his submissions "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

**I.    PROCEDURAL DUE PROCESS**

Kabba argues that "[t]o justify [his] ongoing prolonged detention, due process requires that the government establish, at an individualized hearing before a neutral decisionmaker, that [his] detention is justified by clear and convincing evidence of flight risk or danger, even after consideration whether alternatives to detention could sufficiently mitigate that risk." Docket Item 1 at 10.

The Fifth Amendment's Due Process Clause prohibits the federal government from depriving any "person . . . of . . . liberty without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. "[G]overnment detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections . . . or, in certain special and 'narrow' nonpunitive 'circumstances,' . . . where a special

5

justification, such as harm-threatening mental illness, outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Id.* (internal citations omitted) (emphasis in original). Other than those unique, special, and narrow circumstances, "[o]nly a jury, acting on proof beyond a reasonable doubt, may take a person's liberty. That promise stands as one of the Constitution's most vital protections against arbitrary government." *United States v. Haymond*, 139 S. Ct. 2369, 2373 (2019) (Gorsuch, J., announcing the judgment of the Court and delivering an opinion).

"Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." *Plyler v. Doe*, 457 U.S. 202, 210 (1982); *see also Mezei*, 345 U.S. at 212 ("It is true that aliens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law."). At the same time, Congress has "broad power over naturalization and immigration, [permitting it to] make[] rules that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)). The Due Process Clause is not offended by the mandatory detention of aliens for the "*brief period necessary* for their removal proceedings," *id.* at 513 (emphasis added), but "a lawful permanent resident alien . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention bec[omes] unreasonable or unjustified." *id.* at 532 (Kennedy, J., concurring).

For that reason, this Court "has evaluated procedural due process challenges to immigration detention with a two-step inquiry." *Hemans v. Searls*, 2019 WL 955353, at

6

*5 (W.D.N.Y. Feb. 27, 2019).  "As the first step, the Court considers whether the alien's detention has been unreasonably prolonged."  *Id*.  "If it has not, then there is no procedural due process violation."  *Id*.  "But if it has, the Court proceeds to step two and 'identifies the specific dictates of due process.'"  *Id*. (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).  If the government has not provided the procedural safeguards required by the Due Process Clause to an alien subject to unreasonably prolonged detention, "then his continued detention violates procedural due process."  *Id*.

### A. Kabba's Unreasonably Prolonged Detention

In *Demore*, the Court explicitly noted that "[u]nder § 1226(c), . . . in the majority of cases [detention] lasts for less than the 90 days . . . considered presumptively valid in *Zadvydas*." 538 U.S. at 529.  Diving even deeper, the Court noted that "in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days."  *Id*.  And "[i]n the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the [BIA], appeal takes an average of four months, with a median time that is slightly shorter."  *Id*.  Although there is no bright-line rule in determining whether detention has become unreasonably prolonged, *see Hechavarria v. Sessions*, 2018 WL 5776421, at *5-*6 (W.D.N.Y. Nov. 2, 2018), "courts become extremely wary" of concluding that detention is not unreasonably prolonged "as detention continues past a year."  *See Yagao v. Figueroa*, 2019 WL 1429582, at *2 (S.D. Cal. Mar. 29, 2019) (quoting *Muse v. Sessions*, 2018 WL 4466052, at *4 (D. Minn. Sept. 18, 2018)); *see also Reid v. Donelan*, 2019 WL 2959085, at *9-*10 (D. Mass. July 9, 2019) ("detention is likely to be unreasonable if it lasts for more than one year during removal proceedings

7

before the agency, excluding any delays due to the alien's dilatory tactics," but "[t]his one-year period is not a bright line.").

"[W]hen weighing the lawfulness of continued detention of an alien under the Due Process Clause," several factors determine whether detention is unreasonably prolonged. *Jamal A. v. Whitaker*, 358 F. Supp. 3d. 853, 858-59 (D. Minn. 2019). For example, this Court has considered "(1) the total length of detention to date; (2) the conditions of detention; (3) delays in the removal proceedings caused by the parties; and (4) the likelihood that the removal proceedings will result in a final order of removal." *Hemans*, 2019 WL 955353, at *6.

First, and most important, courts consider the length of detention. "The total length of the detention is the most important factor." *Reid*, 2019 WL 2959085, at *9; *see also Sajous v. Decker*, 2018 WL 2357266, at *10 (S.D.N.Y. May 23, 2018) (the "most important . . . factor that must be considered is the length of time the alien has already been detained"). Indeed, "the constitutional case for continued detention without an inquiry into its necessity becomes more and more suspect as detention continues past" the thresholds identified in *Demore*. *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 234 (3d Cir. 2011), *abrogated on statutory grounds by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). Kabba has been in DHS custody since February 6, 2018—more than eighteen months and much longer than the four-month average period contemplated in *Demore*. *See Demore*, 538 U.S. at 529; *see also Jennings*, 138 S. Ct. at 864 (Breyer, J., dissenting) (individuals with mental illness "dangerous to themselves or to others may be confined involuntarily . . . [with] the right to review of the circumstances at least annually."). As this Court has noted, "courts have found detention shorter than a year to

8

be unreasonably prolonged as part of a procedural due process analysis." *Fremont v. Barr*, 2019 WL 1471006, at *4 (W.D.N.Y. Apr. 3, 2019) (and cases cited therein). Because Kabba's detention has surpassed the one-year period by which time "detention is likely to be unreasonable," *Reid*, 2019 WL 2959085, at *9, this factor supports his argument that his detention without an individualized hearing has been unreasonably prolonged.

Second, courts consider the conditions of detention. But neither party has supplied the Court with any information about the conditions that Kabba faces at the Buffalo Federal Detention Facility.[3] So this Court cannot address that factor.

Third, courts consider whether either side is responsible for delay. The Second Circuit has indicated that this factor weighs against finding detention unreasonably prolonged when an alien has "'substantially prolonged his stay by abusing the processes provided to him,'" but not when "an immigrant . . . [has] simply made use of the statutorily permitted appeals process." *Hechavarria v. Sessions*, 891 F.3d 49, 56 n.6 (2d Cir. 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)). The government argues that on these facts, "Kabba's continued detention is largely attributable to his own litigation strategy" and is therefore not unreasonably prolonged. Docket Item 10-1 at 8.

---

[3] In Kabba's reply, he asserts that the medical staff at the Buffalo Federal Detention Facility "engaged [in] illegal fraud" by falsifying his medical record. Docket Item 11 at 1. But this Court does not interpret these allegations to describe conditions at the detention facility. Instead, this Court believes these are new claims that are improperly raised in this proceeding. *See supra* note 1.

9

DHS "placed Kabba in removal proceedings" on March 8, 2018, more than a month after DHS took him into custody,[4] and more than eight months after DHS lodged an immigration detainer against him. Docket Item 10-2 at 3. "Congress has directed [DHS] to identify and track deportable criminal aliens while they are still in the criminal justice system, and to complete removal proceedings against them as promptly as possible." *Demore*, 538 U.S. at 530 n.13. Moreover, DHS may "complete removal proceedings against . . . deportable criminal aliens before their release" from the criminal justice system. *Id*. So it is far from clear why DHS waited a month after detaining Kabba—and eight months after lodging an immigration detainer against him—to begin removal proceedings. DHS obviously knew of Kabba's immigration status and the basis for its removal charges at least eight months before the proceedings began. The government is therefore responsible for any delay prior to the commencement of removal proceedings. *Cf. Ly v. Hanson*, 351 F.3d 263, 273 (6th Cir. 2003) (DHS "may detain *prima facie* removable criminal aliens, without bond, *for a reasonable period of time required to initiate and conclude removal proceedings promptly*.") (second emphasis added).

Conversely, there is no indication that Kabba delayed at all when challenging his removal, appealing that decision to the BIA, or seeking review by the Second Circuit. Especially given Kabba's *pro se* status, there is no reason to conclude that he is purposely "string[ing] out the proceedings in the hopes that a federal court will find the delay 'unreasonable' and order [his] release." *Ly*, 351 F.3d at 272. On the contrary, he

---

[4] It is unclear to this Court on what basis DHS may detain someone for a month if that person is not subject to a removal order nor is in removal proceedings.

10

has moved promptly to seek "meaningful judicial review" of an adverse removal decision he believes is incorrect—a process "grounded in both the statute and the Constitution and [that] may not be dismissed by the government as a mere procedural nuisance." *Hechavarria*, 891 F.3d at 56.[5]  Considering the government's delay in getting the removal process started, this factor also weighs in favor of finding Kabba's detention to be unreasonably prolonged.[6]

---

[5] The government relies on *Doherty v. Thornburgh*, 943 F.2d 204, 212 (2d Cir. 1991), to argue that Kabba may not "rely on the extra time resulting [from his litigation] to claim that his prolonged detention violates substantive due process.'" Docket Item 10-1 at 8.  As this Court has explained, that is very true in cases such as *Doherty*, where an alien raises a substantive due process challenge to reasonableness of the length of detention notwithstanding the procedures used to justify that detention.  *See Campbell v. Barr*, 2019 WL 2106387, at *6 (W.D.N.Y. May 14, 2019).  In *Doherty*, the court's conclusion relied on "consistent administrative and judicial findings that [the detainee] present[ed] an exceptionally poor bail risk."  943 F.2d at 211; *see also Doherty v. Thornburgh*, 750 F. Supp. 131, 139 (S.D.N.Y. 1990), aff'd, 943 F.2d 204 ("the evidence is overwhelming that petitioner, if released, would pose such a substantial risk of flight that no conditions of bail could reasonably assure his surrender for deportation").  In contrast, Kabba's procedural due process challenge here addresses only whether the government has made adequate findings after adequate procedures to justify his prolonged detention.  *See* Docket Item 1.

[6] One court in this district has recently held that nether party is responsible when the delay "appears largely due to the burgeoning case docket of the Immigration Court in Batavia."  *Garcia v. Whitaker*, 2019 WL 3802536, at *9 (W.D.N.Y. Aug 13, 2019).  Nothing in the record here indicates any such burgeoning case docket.  But to the extent that there is a backlog, responsibility for its impact falls on the government, not an alien in removal proceedings.  It is the government's responsibility to ensure that removal proceedings for detained aliens are "initiate[d] and conclude[d] . . . promptly" and in "a reasonable period of time." *Ly*, 351 F.3d at 273.  Congress is responsible for adequately funding the Immigration Court, and the executive branch is responsible for bringing an appropriate number of removal proceedings given the amount of funding Congress has allocated to get the job done.  Therefore, if there is a burgeoning case docket at the Batavia Immigration Court, that is a problem caused by Congress, the executive branch, or both.  But it is certainly not a problem caused by detained aliens such as Kabba.

11

Finally, courts consider the likelihood that the removal proceedings will result in a final order of removal. This Court declines to weigh the merits of Kabba's claims pending before the Second Circuit. But that court did grant Kabba's motion for a stay of his removal. *See* Order, *Kabba v. Barr*, No. 19-695 (2d Cir. June 20, 2019). And in its decision to do so, the court "consider[ed] . . . the relevant factors, including, most critically, the likelihood of success on the merits." *Id.* (citing *Nken*, 556 U.S. at 433-36). In light of that decision, this Court therefore presumes that there is at least some merit to Kabba's petition and that this factor weighs at least somewhat in his favor.

After weighing these factors, this Court concludes with little difficulty that Kabba's detention has been unreasonably prolonged. Therefore, this Court turns to the second step of the two-party inquiry—the process constitutionally due to Kabba.

### B. The Process Due to Kabba

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors," *id.* at 335, "(A) the private interest affected; (B) the risk of erroneous deprivation of that interest through the procedures used; and (C) the governmental interest at stake," *Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017). Here, that analysis lead to the conclusion that Kabba's continued detention without individualized findings made by a neutral decision maker after a robust hearing fails to "comport with the 'fundamental fairness' demanded by the Due Process Clause." *Schall v. Martin*, 467 U.S. 253, 263 (1984) (quoting *Breed v. Jones*, 421 U.S. 519, 531 (1975)).

12

### 1. The Interests at Stake

Kabba's interest in his freedom pending the conclusion of his removal proceedings deserves great "weight and gravity." *Addington v. Texas*, 441 U.S. 418, 427 (1979). Kabba has an obvious interest in his "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint." *Zadvydas*, 533 U.S. at 690. Moreover, while "[t]he private interest here is not liberty in the abstract, but liberty *in the United States*," *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) (emphasis in original), the Second Circuit has stayed Kabba's removal in light of its review of his removal order, and he still stands to "lose the right 'to stay and live and work in this land of freedom.'" *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (quoting *Bridges v. Wixon*, 326 U.S. 135, 154 (1945)).

Kabba's petition provides little information about any ties to the United States that strengthen his interest in being free from detention in this country as opposed to being free from detention in Sierra Leone. *See generally Landon*, 459 U.S.at 34 (losing "the right to rejoin [one's] immediate family [is] a right that ranks high among the interests of the individual"). But the government does not argue that Kabba lacks any such ties. *See* Docket Item 10-1. Because of Kabba's *pro se* status, and because "[t]his Court has come to believe that no rational person would subject himself or herself to unreasonably prolonged detention in a jail-like detention facility unless that person's liberty interests in remaining in the United States are quite strong," *Joseph v. Barr*, 2019 WL 3842359, at *8 (W.D.N.Y. Aug. 15, 2019) (quoting *Fremont*, 2019 WL 1471006, at *6 n.7), the Court presumes that Kabba has a substantial interest in release from detention in the United States.

13

The government's interests in detaining Kabba also may be strong. The government argues that "the justification for 8 U.S.C. § 1226(c) [detention] is based upon the Government's concerns over the risks of flight and danger to the community." Docket Item 10-1 at 9 (quoting *Demore*, 538 U.S. at 531). And the government notes that "Kabba stands convicted of . . . two crimes," suggesting that its interest in detaining him is based on the risk of danger he poses to society. *Id.* "The government's interest in preventing crimes by arrestees is both legitimate and compelling." *Salerno*, 481 U.S. at 749. In addition, general concerns about the risk of flight highlight the government's compelling interest in preserving its "ability to later carry out its broader responsibilities over immigration matters." *Doherty*, 943 F.2d at 211. If Kabba's detention serves these legitimate and compelling ends, they "outweigh" his "'constitutionally protected interest in avoiding [prolonged] physical restraint.'" *Zadvydas*, 533 U.S. at 690 (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)).

### 2. The Risk of Erroneous Deprivation of Liberty

In light of the procedures used thus far, there is a substantial risk of an erroneous deprivation of Kabba's liberty interest. Although Kabba had a detention hearing before an immigration judge on July 18, 2018, the immigration judge concluded only that 8 U.S.C. § 1226(c) mandated Kabba's detention without bond. He made no individualized findings regarding Kabba's risk of flight and danger to the community—the reasons the government argues that § 1226(c) mandates his detention. *See* Docket Item 10-1 at 9.

As the government notes, *id.*, DHS reviewed Kabba's custody on July 3, 2019, and determined that Kabba should be detained pending judicial review of his removal order. Docket Item 10-2 at 6. But DHS explained to Kabba that it would not release

him unless *he* "demonstrate[ed] by 'clear and convincing evidence' that [*he*] will not pose a danger to the community and will not be a significant flight risk." Docket Item 12 at 39. What is more, Kabba also was required to "demonstrate that a travel document [will not be] available in the reasonable [sic] foreseeable future to affect [sic] [his] removal from the United States" to be released after the custody review. *Id.* That latter requirement bears little or no relationship to detaining someone during removal proceedings who is neither a risk of flight nor a danger to society; rather, that question is relevant when detaining someone who *is* a risk of flight or a danger pending removal after removal proceedings are completed. *See Zadvydas*, 533 U.S. at 690-92 ("justification [of] preventing flight . . . is weak or nonexistent where removal seems a remote possibility at best" and although "protecting the community . . . does not necessarily diminish in force over time[,] . . . removable status . . . bears no relation to a detainee's dangerousness"). What is more, Kabba's custody review was conducted by DHS officials—not a neutral decision maker. *See Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) (quoting *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980)) (an alien must be afforded a hearing "by 'an impartial and disinterested tribunal'").

Because the government placed the burden of proof on Kabba, because Kabba was required to demonstrate that Sierra Leone would not be able to provide him with travel documents (a requirement that alone bears no relationship to the government's reasons for detaining him under §1226(c), *see* Docket Item 10-1 at 9; *Zadvydas*, 533 U.S. at 690), and because there was no neutral decision maker, the risk of an erroneous deprivation of Kabba's liberty pending completion of these removal proceedings is indeed substantial.

### 3. The Remedy

The Due Process Clause requires a hearing that "satisfies the constitutional minimum of fundamental fairness," *Santosky v. Kramer*, 455 U.S. 745, 756 n.8 (1982) (internal citations omitted), in determining whether a "special [compelling] justification . . . outweighs '[Kabba's] constitutionally protected interest in avoiding [unreasonably prolonged] physical restraint,'" *Zadvydas*, 533 U.S. at 690 (quoting *Hendricks*, 521 U.S. at 356). To sustain the prolonged detention of an alien who has been admitted to the country and is subject to removal proceedings, "the [g]overnment [is] required, in a 'full-blown adversary hearing,' to convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person," *Foucha v. Louisiana*, 504 U.S. 71, 81 (1992) (quoting *Salerno*, 481 U.S. at 751), or ensure that the alien will appear for any future proceeding.[7] This requires consideration of less restrictive alternatives to detention. *See id.*; *cf. United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000) ("When a plausible, less restrictive alternative is offered to a" regulation burdening a constitutional right, "it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals."); *see also Doherty v. Thornburgh*, 750 F. Supp. 131, 139 (S.D.N.Y. 1990), *aff'd*, 943 F.2d 204 ("evidence is overwhelming that [alien], if

---

[7] As this Court explained in *Hemans v. Searls*, 2019 WL 955353, at *8 n.7 (W.D.N.Y. Feb. 27, 2019), a pretrial detainee's right to a speedy trial distinguishes the interests supporting the evidentiary standard traditionally applied to flight risk determinations for pretrial detention purposes from what is required after an unreasonably prolonged immigration detention. *See Santosky v. Kramer*, 455 U.S. 745, 756 (1982) (quoting *Addington v. Texas*, 441 U.S. 418, 424 (1979)) ("clear and convincing evidence" standard applies "when the individual interests at stake in a . . . proceeding are both 'particularly important' and 'more important than mere loss of money'").

16

released, would pose such a substantial risk of flight that no conditions of bail could reasonably assure his surrender for deportation.").

Kabba's § 1226(c) detention has been unreasonably prolonged, and § 1226(c) does not require an individualized hearing where the government must demonstrate by clear and convincing evidence that no conditions of release can reasonably serve the government's compelling regulatory interests in detaining him. *See Jennings*, 138 S. Ct. at 846-47. The statute therefore is unconstitutional as applied to him, and his continued detention violates the Due Process Clause.

## II.    EXCESSIVE BAIL CLAUSE

Kabba also argues that the "government's categorical denial of bail to certain noncitizens violates the right to bail encompassed by the Eighth Amendment." Docket Item 1 at 10-11. The Excessive Bail Clause requires "that the Government's proposed conditions of release or detention not be 'excessive' in light of the perceived evil." *Salerno*, 481 U.S. at 754. Although detention of criminal aliens during removal proceedings for only a brief period without individualized findings after a hearing is not "excessive in relation to the valid interests the government seeks to achieve," *Sankara v. Barr*, 2019 WL 1922069, at *9 (W.D.N.Y. Apr. 30, 2019) (quoting *Galen v. Cty of Los Angeles*, 477 F.3d 652, 660 (9th Cir. 2007)); *see Demore*, 538 U.S. at 519-21 (explaining Congress's interests in brief mandatory § 1226(c) detention), the same cannot necessarily be said "after unusual delay in deportation hearings," *Carlson v. Landon*, 342 U.S. 524, 546 (1952). But because this Court has determined that due process requires that Campbell receive an individualized hearing, his claim that the Excessive Bail Clause requires the same result is moot.

17

**CONCLUSION**

For the reasons stated above, Kabba's petition, Docket Item 1, is conditionally GRANTED. **Within thirty days of the date of this decision and order**,[8] the government must release Kabba from detention unless a neutral decision maker conducts an individualized hearing to determine whether his continued detention is justified. At any such hearing, the government has the burden of demonstrating by clear and convincing evidence that Kabba's continued detention is necessary to serve a compelling regulatory purpose, such as protecting against danger to the community or risk of flight. Whether detention is necessary to serve a compelling regulatory purpose requires consideration of whether a less restrictive alternative to detention would also address the government's interests. In other words, Kabba must be released unless a neutral decision maker finds by clear and convincing evidence that no condition or

---

[8] 28 U.S.C. § 2243 authorizes this Court to address habeas petitions "as law and justice require." And "habeas corpus is, at its core, an equitable remedy." *Schlup v. Delo*, 513 U.S. 298, 319 (1995). "[S]ince all or almost all equitable remedies are discretionary, the balancing of equities and hardships is appropriate in almost any case as a guide to the [Court's] discretion." *Tenn. Valley Authority v. Hill*, 437 U.S. 153, 193 (1978) (quoting D. Dobbs, Remedies 52 (1973)). In light of that, this Court frequently balances the equities by ordering the government to remedy procedural due process violations after prolonged immigration detention within fourteen days of its decision and order. *See, e.g.*, *Joseph v. Barr*, 2019 WL 3842359, at *9 (W.D.N.Y. Aug. 15, 2019); *Campbell v. Barr*, 2019 WL 2106387, at *9 (W.D.N.Y. May 14, 2019); *Fremont v. Barr*, 2019 WL 1471006, at *8 (W.D.N.Y. Apr. 3, 2019). In this case, however, Kabba requested that this Court order his release "within 30 days unless [the government] schedule[s] a hearing before an immigration judge." Docket Item 1 at 11. Ordering a hearing to take place in a time frame more aggressive than that requested by the petitioner would therefore improperly balance the equities.

combination of conditions of release can reasonably assure Kabba's appearance and the safety of the community or any persons.

SO ORDERED.

Dated: August 22, 2019
Buffalo, New York

                                         *s/ Lawrence J. Vilardo*
                                         LAWRENCE J. VILARDO
                                         UNITED STATES DISTRICT JUDGE